## GREEN–FULTON–CUNNINGHAM CO. et al. v. SECURITY TRUST CO.

(Circuit Court of Appeals, Sixth Circuit. March 4, 1925.)

No. 4166.

I. Receivers ☞152—Claims for advertising space held not for "merchandise" supplied.

Claims for advertising space furnished to an automobile manufacturing company under contracts, with the services necessarily incident thereto, are not for "merchandise actually supplied" to the company, within the meaning of an agreement by prior creditors to subordinate their claims to its indebtedness to merchandise creditors for merchandise actually supplied within a certain time in the future.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Merchandise.]

**2. Words and phrases—"Merchandise:"**

Literally, "merchandise" connotes something tangible, goods, wares, or commodities, as distinguished from intangible, choses in action, credits, rights, or services.

Appeal from the District Court of the United States for the Eastern District of Michigan; Charles C. Simons, Judge.

Creditor's suit against C. H. Wills & Co., in which the Security Trust Company was appointed receiver. The Green-Fulton-Cunningham Company and another appeal from an order denying priority to their claims. Affirmed.

Bela J. Lincoln, of Detroit, Mich. (Clark, Emmons, Bryant & Klein, of Detroit, Mich., on the brief), for appellants.

Samuel R. Williams, of Detroit, Mich. (Stevenson, Carpenter, Butzel & Backus, of Detroit, Mich., on the brief), for appellee.

Before DONAHUE and MACK, Circuit Judges, and ROSS, District Judge.

MACK, Circuit Judge. C. H. Wills & Co., manufacturers of automobiles, were in financial difficulties in the summer of 1921. On August 17, 1921, the then creditors, banking institutions, having claims of $4,500,000, made additional loans under an agreement whereby their old claims were to be secondary and subordinate to all future indebtedness of C. H. Wills & Co. for money thereafter loaned, not exceeding $1,500,000, and to indebtedness of C. H. Wills & Co. "to merchandise creditors for merchandise actually supplied to C. H. Wills & Co. on credit prior to July 1, 1923." As a consideration for the agreement, Wills invested an additional $1,000,000 cash in additional preferred stock of the company. In 1922, on a creditor's bill, appellee by consent was appointed receiver of C. H. Wills & Co.

As priority claims allowed exceed $3,000,000 and the assets on hand are less than one-fourth of that amount, the contest is in fact between appellants and conceded priority creditors; the original $4,500,000 creditors will receive nothing, inasmuch as the payments on their claims will inure to the benefit of the priority creditors. In the stipulation of facts, approved by the trial judge in lieu of a certificate of evidence, appellants' claims as filed recite that they are "for space sold and furnished defendant by claimant in various newspapers and magazines" after August 17, 1921, and before the filing of the creditor's bill, aggregating over $21,000 and $31,000, respectively.

The stipulation recites that appellants are engaged in the business of purchasing and selling advertising to their customers; that their business is largely confined to the buying and selling of all kinds of advertising space as may be required by their customers from time to time; that in this prosecution of their business they purchase particular advertising for cash or upon agreed terms and sell the same in like manner; that in the due operation of its said manufacturing business the defendant was required to advertise its product, in order to compete and procure, on credit from claimants and others, a large amount of advertising in various mediums, in which claimants dealt; that claimants, in effect, purchase advertising space in various leading publications, and are required by the publishers to pay cash for the space so purchased, or to satisfy them as to credit arrangements. In turn claimants sell to their respective customers from time to time the space so purchased. Thus claimants may and do buy and sell any particular designated space in any such mentioned publications. In the incurring of the indebtedness herein claimed, the claimants respectively purchased advertising space as thus outlined, which they, in turn, sold to the defendant, who in regular course used said space and had the benefit thereof; the various publications having been regularly and duly issued and distributed. The claimants themselves have been required to pay for such space, less a discount of 15 per cent., which they receive as their gross profit in the handling of the business.

[1] The sole question, therefore, is whether or not these claims are for an "indebtedness of C. H. Wills & Co. to merchandise creditors for merchandise actually supplied to C. H. Wills & Co.," thereby entitling claimants to share with other priority creditors, in the payments on the $4,500,000 subordinated claims. We concur in the conclusion of the trial judge, confirming the report of the special master that claimants are not entitled to priority as merchandise creditors.

We fully recognize the importance of advertising under present-day business methods, especially in the automobile business. It may even be conceded that, without advertising, the venture would have been still more disastrous to the creditors; but the issue is not as to the meritoriousness of the claims. It is solely whether or not advertising space furnished under contracts, with the services necessarily incident thereto, is "merchandise actually supplied" to defendant within the meaning of the parties.

[2] Literally, merchandise connotes something tangible, goods, wares, commodities, as distinguished from intangible, choses in actions, credits, rights, services. The latter may well be more valuable or extensive: credits to-day are much more vital to business than cash. Gold coins, however, are merchandise; credits are not. If, however, the word "merchandise" admitted of a doubt as to the intent of the parties, "merchandise actually supplied" would seem entirely clear. The parties well knew that heavy advertising expenses would necessarily be incurred in the conduct of the business, just as they knew that many other contractual obligations for services essential to the success of the undertaking would be entered into: if they had wanted to exclude from priority only tort liabilities, or if they had desired to subordinate their claims to all contractual obligations appropriate language was readily available. The very care with which, as appellants insist, the subordinating agreement was framed, and each word and phrase therein selected, but strengthens our conclusion that the parties intended these expressions to be literally and narrowly construed.

Affirmed.